Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 1st Division, the Honorable Justice Carl Anthony Walker presiding. Case number, consolidated case number 1-9-0279 1-9-0283 1-9-0286, Kenneth Tripp versus Union Pacific Railroad Company. Okay, thank you very much Darren. Good afternoon everyone. I'm Justice Walker and I'm here with Justice Griffin and Justice Hyman. They are also on the panel with me and I'd like to ask the lawyers to please introduce yourselves. Clifford Horowitz for the plaintiff. Good afternoon, Your Honor. Jonathan Amarillo for Union Pacific and if I may ask a quick procedural question, I know it's unusual, but given that it is our petition for rehearing that's pending, I was wondering which party would be speaking first and last today. And Mr. Amarillo, since it's your petition, we're going to have you speak first because that's actually the only issue before us today is whether or not we're going to grant this petition. So we're not going to get too much into some of the other issues. We want to focus on that issue, focus on the petition. So you will be speaking first and so I guess Mr. Amarillo, how much time do you need? I'll reserve two minutes for rebuttal, Your Honor. Okay, so you're planning on taking about 18 minutes initially, two minutes for rebuttal, is that correct? Yes, Your Honor. And Mr. Horowitz, how much time will you need? I don't know, it depends on the questions. If I'm limited to 20, then I'm limited to 20. I may take less if there are no questions. Sure, okay, we'll have you allotted for 20 minutes. And again, the way we generally do things is that if the justices are still asking questions and you don't get a chance to get your argument in, sometimes that happens, we will allow you to argue any points that you think are really, really important that we need to hear and you've not had a chance to bring to our attention. And the other justices usually agree with me that we can be pretty flexible on the time to that extent, especially if we prevent you from arguing your Mr. Averill, I'm going to start with you. Thank you, Your Honor, Mr. Presiding Justice, and may it please the court. The circuit court asked this court the following certified question, whether locomotives are in use, as that term is applied in the LIA and the FSAA, if both locomotives have been removed from duty for maintenance, both are in the rail yards designated maintenance area, and one is moving the other within the designated maintenance area. The answer to that question, Your Honors, is no. That's true, whether this court applies the Seventh Circuit's recent test from LaDure versus Union Pacific, or if it applies its own test from the 2011 case, Bala v. Metra. And recognizing that we are limited to the issue on the petition for rehearing, I do think it's worth taking some time to explore those two cases which are relevant to the petition for rehearing. And I'd like to start with the Seventh Circuit's recent case in LaDure. That came out after... Excuse me, but I don't think, I don't see the relevance of those cases at this juncture. That has to do with the merits, should we get there, but why, first of all, Mr. Horwitz has had an opportunity to address the Seventh Circuit case. His brief was filed about a week before that case came down, and it seems that, you know, we're talking here, just as the presiding judge, Justice said, on a narrow issue. So I don't think that's up for grabs right now, that issue. I understand, Justice Hyman. I would add, I would only say that the plaintiff actually has had an opportunity to address LaDure. He did so in his surreply to his petition for rehearing. And the reason I think discussing the two potentially applicable tests, namely the LaDure test or the ballot test, is relevant to the petition for rehearing is because it affects the issues, the factors that we're looking at when deciding the petition for rehearing. But I'm more than happy to skip ahead to the location issue, which is what the court seemed to focus on in its Rule 23 order of May 31st. And the location of the locomotive was the location of the locomotive at the time of injury was the first factor that this court in ballot looked to when deciding whether a locomotive was in use. Now, as the court is aware, there are two locomotives at issue in this case. The first was UP7269. Where was that locomotive at the time of injury? And I emphasize at the time of injury because the court in ballot stated on three separate occasions at pages, I believe, 754, 764 and 765 that the relevant geographic time frame for our inquiry here today is the location of the locomotive at the time of injury at the time of the accident. And that's why I emphasize that. Now, plaintiff testified with regard to UP7269 that that locomotive was, quote, already set on the pit when he began his work that morning. That's at page 1188 of the record. The plaintiff also testified that when he was making the first coupling of UP7269 and UP8516, he had to do that, he had to, quote, come into the pit to perform that coupling. That's also at page 1188 of the record. And plaintiff testified that when he made the joint, that's industry slang for the coupling, he was, quote, in the pit. That's at page 1189 of the record. Now, after the glad hand on UP7269 failed and the three pack was separated from the two pack with UP8516, the engineer then moved that two pack to the furthest extent of the repair line further into the pit. But it was still over the pit at the time of the accident. How do we know that? Because the plaintiff, your honors, told us in his own words. He said that this accident occurred, quote, in the pit area. That's at page 1189 to 90 of the record. And, of course, when he fell and the locomotives were just feet apart, he said that he fell, quote, straight down. He fell, quote, into the pit. And he fell, quote, to the pit floor, which after five or six briefs, his counsel... The problem is that you're arguing the main issues in this case. What we're deciding today is whether or not we're going to grant your motion. And I'd rather you focus on whether or not there are facts present that would allow us to answer the certified question. You're going way deeper than what we are here to do today. I understand that, your honor. And the reason I was addressing those facts was because what the court seemed to be concerned with in its March 31st order was where the locomotive was at the time of the accident. So that's why I bring those facts up. The court said that there seemed to be... And I'm sure this is your case, so you know it better than I do. That's just one factor. So again, we don't want you to tie yourself up into the factors. We want you to focus on the evidence that has already been presented, any judicial admissions that there might be, that will lead this court to the position that we believe we should answer the question. You're arguing it as if we have already ruled against you, and we have not. We've not ruled in anyone's favor. We've simply said that there are still facts that are out there that need to develop before we can answer the legal question. And that's where we want you to focus. Please do that. I understand, your honor. And all those facts that I just mentioned were facts that are already established and of record. And I should add, according to plaintiffs' briefing on the petition for rehearing, those facts are no longer, or at least are not, I should say, contested. The parties agree that both UP 7269 and UP 8516 were over the maintenance pit and well within the maintenance area at the time of the injury. And that goes, Justice Walker, to your question about the facts that are already established and of record that would allow this court to answer the question. And going to the factors that you mentioned, Justice Walker, the ballot court, as you know, identified five factors. The first one was where the train was located or the locomotive was located at the time of the accident. I've already discussed that one. Let's go to the activity of the injured party, which I think was the focus of the court's attention, the court's analysis in the LaDure decision. This factor asks us what the plaintiff was doing when he fell. And all the facts that you need to decide the certified question are already established and they're not contested by the parties. He was attempting to connect UP 7269 with UP 8516 when he fell. And he was doing that so they could receive the inspections, maintenance, and if found necessary, the repairs they needed before they could return to duty on the main line. Just so we're clear, these were repairs for UP 7269. There were no repairs to be done on 8516, correct? I respectfully disagree, Your Honor. That seems to be, and I realize that we're not bound by Judge Berlitz's finding, because this is a question of law and I refuse de novo. We're clear about that. But it seems as though that there was no argument that UP 8516 was not there to be repaired, was not there for which is why Judge Berlitz found that it was in use. So that's a factual question that may not be clear just yet. So explain to us how it's clear that the 8516 locomotive was not in use would be your argument. Yes, Your Honor. Thank you. UP 8516 was not, and I think the record is actually very clear on this. It was not in the pit for solely for purposes of convenience or even for purposes of convenience at all. And I would direct the court to the testimony of Derek Sidlow, who was UP's mechanical manager that day. And he said at page 1234 and 1253 of the record that UP 8516 was taken to the maintenance area for, quote, a periodic inspection. Now that is a quarterly inspection that is much more detailed than the daily inspections. And the way those work, Your Honor, is obviously if they find something wrong with the locomotive during the course of that inspection, they repair it, which they were certainly capable of doing if it was a light repair. Just so that I'm clear here, you're making a distinction because there's case law out there which makes it clear that when the train goes in for the daily inspection, that train is not necessarily out of use. But you're arguing that because it was going in for quarterly inspection, which is a more detailed inspection, that at that time the train is considered out of use. Is that correct? Is that your argument now? That's very close to our argument. I think you've captured about 90% of it there, Your Honor. The only caveat I would add... I don't mind hearing the other 10%, please. We're here to listen. I appreciate that. I agree with you that daily inspections are more perfunctory and simpler than quarterly inspections. The distinction I would draw with the point that you just made is that the cases that plaintiff relies upon, those daily inspections, they don't need to be performed in the maintenance area of a rail yard. So a lot of those inspections are performed out on the main line, which is what we don't have here. We have a more detailed inspection, and we have that inspection being performed not only in the maintenance area, but in the heart of the maintenance area, over the maintenance pit. And there's something else that I would add to that, Your Honor. And I would point the court to the testimony of Daniel Sloan. He was the maintenance manager on duty. And he said that plaintiff, quote, was bringing UP8516, in addition for the periodic inspection, he was bringing it, quote, into the pit so that it could be serviced and maintained. That's at page 1148, 1145, and 1146 of the record. Now, plaintiff's argument that the locomotive was only being taken to the pit for purposes of convenience relies on the testimony of Sloan as well. But if you look closely at that testimony, Your Honor, what plaintiff's attorney was doing was essentially asking Mr. Sloan a hypothetical question. He said, are locomotives occasionally taken, sometimes taken, to the maintenance pit for reasons of convenience rather than maintenance, inspection, or repair? Mr. Sloan said, sometimes that's the case. And then he was asked, could that have been the case here? And Mr. Sloan said, could be, direct quote. But then when Mr. Sloan was shown the records, the maintenance records for that locomotive, he said, no, it was being taken there for servicing and maintenance. So the implication is obviously it wasn't for solely for convenience. So I think the court looks closely at that part of the record, it's going to realize that plaintiff's statement that the locomotive was only being taken to the maintenance area that day for purposes of convenience are not supported by the record, which, again, gives the court all it needs to rule on the petition for rehearing and then answer the certified question. Justice Walker, if I may take advantage of the opening you gave me a little bit earlier to dive into the merits of the dispute a bit, because I do think doing so will be helpful to you if you agree with us that the petition for rehearing should be granted and the certified question can be answered. I don't want to do that only because the justices all conferred prior to, and we said we were not going to hear those arguments. So unless all the justices agree that we should now hear it, I can't allow you to do it because that would be violating what we've already agreed to. So I'll hear from the other justices at this time. I'm fine with them going into it. Yeah, I'm fine with not in great detail, but you know, the bottom line is we have a question here, a certified question. Was it in use? And then three facts. Locomotives have been removed from duty for maintenance. Both are in the rail yards designated maintenance area, and one is moving to the other within the designated maintenance area. That's really, you know, are these facts disputed? If they're disputed, it's not appropriate for a certified question. But anyway, I don't mind going into a little bit because sometimes it does cover over to that. Yes, Simon. That's fine if it's short. You've got to keep it really short, please. You know what, your honors, I will take the court's hint and save the rest of my time for Let me ask a question before you do that. You went over three of the factors. Are there any other areas that any other facts that have been established in the trial court that we would need to consider in deciding whether to send this back or not? Yes, there are, your honor, and those would be the fourth and fifth factors of the ballot test if that's the test the court decides to apply. The fourth factor from the ballot test, I'm directly quoting the court, is whether it is being moved to a repair location, being moved, present continuous tense, or on a track for departure. And that is relevant to your question, your honor, because both parties agree that at the time of the accident, the locomotive from which plane it fell, UP8516, was being moved to the repair location, and in the repair location, in fact, over the pit, not to a track for departure. And I think that factor is phrased in the disjunctive for a reason because it represents the spectrum of activity that you can look at. And here, UP8516 falls squarely within one side of that spectrum in the court's words, being moved to a repair location. And we would say even within the repair location as the circuit court found. The other factor that I believe you were referencing, Justice Hyman, was whether servicing and maintenance work have already been performed. The answer here is no, and that is undisputed. So I think all five factors in BALA weigh in our favor. And just very quickly, I'd like to touch on Lador because plaintiff did have an opportunity to respond to it in his reply to our petition for rehearing, and given that it is new law, I think I need to at least briefly address it. The Seventh Circuit there, their test focused on one of the BALA factors, although they didn't specifically cite BALA, that's what they were doing. They looked to whether the plaintiff, Mr. Lador there, was operating a locomotive, or at least he was near ready for it to be operated, or he was instead doing something to prepare it for future operation. Mr. Lador's job description, whether he was a member of the transportation department or instead a member of the maintenance department, didn't really matter. Where the locomotive was at the time of the accident, the court discounted that factor as well, and Mr. Lador's locomotive was nowhere near a maintenance area in that case. But the court said that because he was doing something to ready the locomotive for future use, it was not in use. In fact, it was the antithesis of using it. And here, there is no fair question based on the facts of UP 7269 or UP 8516. One was sitting still over the pit, and the other was being pushed to couple with it over the pit. So plaintiff's activity was in the nature of a task necessary to prepare that both locomotives for future use. And we believe that should be the end of the inquiry, although we are perfectly comfortable with the court applying the five ballot factors for the reasons I stated before. I believe that the answer to the certified question should be in our favor under that test as well. And with that, I will say... I have one more question. Yes. Besides the five ballot factors, are there any other factors in any other cases that you think are relevant here and that we should take account of? I don't think there are, Your Honor. So the Fourth Circuit in the Angel decision applied the two factors that the ballot court identified as the primary factors, the location of the locomotive at the time of the injury and the plaintiff's activity at the time of the injury. The Fourth Circuit later revised that to adopt the exact same test that the ballot court applied. So you have the First Circuit and the Fourth Circuit essentially applying the ballot factors. And I don't see any other factors that are really relevant. I know plaintiff focuses on... he references a lot of facts that were also at play in ballot, such as whether the departmental designation of the plaintiff should matter or whether the locomotive was blue flagged, which basically just means, hey, this locomotive or this piece of equipment is being worked on at the time. I don't think those are relevant because they're all wrapped up within the ballot factors. They're redundant of those factors. And I think when plaintiff relies so heavily on them, what he's trying to do is essentially overwhelm the ballot factors, which he can't do because they're built into them already. Well, you're getting into the door a bit too much because that case just factually involved a train that was on a sidetrack and it was actually a part of another train that needed to be assembled. So that was part of the Seventh Circuit's finding. That's really all the Seventh Circuit said. It's a very short opinion. They didn't do very much of an analysis at all. Well, the court relied on Lyle and Tisneros, which provides the analysis that I believe you think is lacking there, Justice Walker. And the only thing I would add to that is that he was not working on a train, Mr. Ledour, at the time of the accident. Mr. Eaton and I actually handled that appeal. I'm very familiar with the facts. He was working on a locomotive in a consist, just as the plaintiff here was. If there are no other questions, I'll reserve the rest of my time for rebuttal. Thank you. Mr. Bowen. Thank you. Good afternoon, Mr. Presiding Judge and Justices. My name is Cliff Horwitz. I'm not sure exactly what you want me to address initially, but I'll try to respond to a couple of in the sense that there's testimony that this train or locomotive 8516 was being brought for either convenience, daily inspection, which is the same thing as convenience because the daily inspection is done everywhere daily. You look at your vehicle daily. Bringing it to a repair location. There's also plenty of testimony. This is a location that just dumped the trains for convenience. Then the final comment defendant made that the plaintiff was not involved in a train operation. It's just completely false. In Ledour, there was no operation of a train. No train was moving. No train was involved in switching operations. This case goes to the heart of what the FSAA and LIA is about. Switching operations is so much what done in operating trains. If we're going to confine now to train operation, to just being on the line and the minute they're not traveling from Chicago to Newark, they're no longer online and anything they do. Mr. Horwitz, it seems that your response brief with regard to the issue before us, you said that you wanted a rehearing with oral argument and the only reason you would do that, it seems to me, is if you wanted us to hear the merits of the question that was certified by Judge Erlich, correct? You want us to hear the merits, is that correct? That was not the agreement defendants and I had. I'm not saying agreement. I said I'm looking at your brief. Your brief says accordingly and for all these reasons plaintiff requests a rehearing with oral argument. That was on your response brief to the petition for rehearing. Now when you're asking and say you want a rehearing, you agree. You want a rehearing on the decision that we issued in March. Now are you saying something different today than you said in your brief? No, I agree with you. I want a rehearing on the decision you issued in March. Okay, so if you want a rehearing on the decision in March, in March we said there were certain factual issues that didn't seem to have been nailed down that needed to go back to the trial court and for that reason we couldn't decide the certified issue. Now are you saying something different today? Are you saying there are issues that has to go to the trial court, which would be contrary to your response brief? Well, I'll say it in a different way, but yes responsive to your question. I think you can take the disputes in fact and you just look at something that I think everyone in my opinion, I can't speak for the justices, but all the parties and everybody seems to be ignoring which is the statute, which is 20303. So you can take the defendant's facts all in their interpreted those facts and you look at 20303, which is under the Safety Appliance Act and it says liability taking to a place of repair and it says the movement of a vehicle under this section, that's the SAA, the movement of a vehicle under this section is at the risk only of the railroad carrier. That's it. It specifically applies to this situation and Supreme Court justices have relied on this and then it goes on to say that nothing in this section relieves the carrier from liability for defective equipment. So you have a statute directly on point and for some reason after the Supreme Court has dealt with this statute and said taking vehicles to repair over and over again, even sitting for 30 days, taking vehicles to repair over and over again, they are in use and the employee is protected. They have a statute that says it. It's only at the risk of the carrier and now are we going to say, guess what? The courts are going to find that taking a vehicle for repair is no longer protected despite we having a statute under the SAA. Wait a minute. You're jumping the gun. Okay. All right. We want to decide right now. We have one issue before us. That's a certified question. We said we weren't going to decide it because there were factual issues involved. Either we send it back on those factual issues or we hear the case on the merits on those factual issues and that's what I understood both sides as requesting in their briefs on reconsideration. To me, it's a yes or no. I agree with you. There are factual issues. I disagree in the sense that those factual issues make no difference. That's what I want because you can take all those factual issues. They're meaningless. Okay. How we interpret the factual issues is on the merits and we may or may not have an oral argument on that later on. I see. If we decide to answer the question presented by Judge Erlich, then maybe there'll be new briefing. Maybe we'll do something else. Who knows? But we'll have to decide that. Those are the issues that you're raising now. The question before us, however, is whether we get there or not. Right now, if we leave everything alone and deny the re-hearing, this goes back to Judge Erlich. Is that what you want? If this court is of the belief that the disputed facts don't fall under 20303, then yes. That's not the question. That is not the question. The question is whether there's a record that we look at and the decisions made by Judge Erlich and whether we have all the facts that are in the record that are needed in order to answer his certified question. How we take those facts and which ones we look at and so forth and so on, that's what you're arguing. That's a different issue. That's the merits. So, either you agree with our original decision as send it all back to Judge Erlich and you facts have been established. We take them as we look at the facts, whatever they are, and connect you with the law and make a decision on the certified question. I agree with your original decision that there are facts in dispute. I'm not going to dispute that. I mean, there are. There are facts all over these briefs and dispute on these issues. But that's not a dispute. Dispute. The question is, do those decide the case? And that's why I wanted re-hearing. Not because I didn't feel the relevant facts were insufficiently in dispute. I thought you could take all these facts and decide them the defendant's way. And it wouldn't matter under 203-03. It just doesn't matter. Again, you're going to the merits. Okay. All right. Well, then I, then I agree with you. Are we going to keep that? We've already decided to send this case back to Judge Erlich. All right. Then I agree with you. I agree with you that it goes back because if you need, if more facts need to be established. What is it that Judge Erlich's going to do? Why would we send it back? Because if more facts need to be established in order to determine if it falls under 203-03 or the door or, or the, the seventh, the, the, our, our first district decision, and I'm very bad at names. The case you were all just discussing, the five factors or the multi-factor decision. If those are the tests and these facts and it, and it's just those five and not multifactorial and these factors then become important to determine where we go. And if, if we're, I have, I have to state what I can say, if we ignore a number of issues like a statute, then those factors mean it's a question of fact that would have to be determined more determined in order for the, then I would agree with you. You're confusing me because you wrote a, a brief that says you want to re-hearing an oral, with oral argument and which is today. Yes. Why would he want to re-hearing if you want to send it back? I want to send it back. I want to send it back under the, under the framework that you have said me. I, I thought, and maybe, you know, I'm not the appellate expert in the world. Okay. I thought that we were arguing also whether you can take these facts as true and the statute controls. I didn't see any limit on why we couldn't argue that. It was argued in the briefs, it was argued by the defender, it was argued by the plaintiff. But if we can't argue it, then I am misunderstanding what we're here for today. Well, wait a minute. We sent the case back, right? Yes. We didn't decide the issue that the judge certified, correct? Yes. The defendant asked us to reconsider. Correct. You agreed that it should be reconsidered. If you're saying we should send it back, then you would disagree and say, no, it should go back. I can't, I mean, I'm trying to get my hands around, because you seem to be, because what you said is partially correct. I would like to say what the agreement is, but the court prohibited me from saying it. If you want me to say what the agreement is, I'll be happy to say it. I don't know what agreement. Well, if there's an agreement regarding the facts, we do want to hear that agreement. There was an agreement that all issues that went up in appeal should be heard, not just one issue, which no matter what the court rules will make this totally meaningless because it's a split up decision. And so what the defendant smartly did is they made a motion regarding their one issue and left out all the others. And we didn't quickly enough, because I'm not an appellate genius, make a motion. Oh, we should do all the other issues. Do you think I want this one issue before the court where the issues where we lost are not before the court? That's insane. So I hope I answered your question. That's why we're before the court and something that's very uneconomical, very expensive. And it just means we're going to be back here over and over again, which was the whole reason why we certified this in the first place with the judge to try to stop this. Can I ask it again? There are three. The question is, is it in use? And there are three facts that are in the certified question. Is there a question as to the facts? Were both locomotives removed from duty for maintenance? No. Do you agree with that? No. You say there's a fact issue on that? Yes, there's plenty of facts in the briefs on that from the defendant's head of safety, by the way. And then both are in the maintenance area and a convenience area. It serves two purposes. And one is moving the other within the designated maintenance area. There's outside of it into the designated. They're both outside of it. And a few seconds later, they're in it and the accident happens. So why? Why did you certify this question? It's because it all came down to the agreement I had with them that morphed into what we're here for today, which I am totally against. But I got caught up in making an agreement in good faith, and I wasn't smart enough. I'll just admit it. I mean, I wasn't. So I should have appealed all the issues. But I still feel the statute controls. No matter what any court says, this statute controls. This statute still exists in 20303 controls. Well, as far as this certified question is concerned, to some extent, Judge Early found partially in your favor. Yes. Finding that 8516 was in use. Yes. So the but so again, I'm coming back to Justice Hyman's question. You you believe that there are factual issues, material factual issues, or you believe there are no material factual issues because you seem to be saying both at the same time. I am saying both. I'm saying if the court follows 20303 and the Supreme Court decisions, the fact issues and dispute are meaningless. If the court says, no, I don't believe 20303 applies. And I think cases from that are 50 or 75 or 80 years old for the Supreme Court are not authoritative anymore. We're not bound by them. I can I can respond. I can rely on other cases. Then Yeah, facts are in dispute. That's how I see this. And you mentioned the head of safety. Were you referring to Daniel Sloan when you mentioned? Yes, when he said the plaintiff was in the transportation area. We showed a picture of the transportation area. It was not over a pit. You could see the pit starts. The plaintiff was also employed in the transportation area. Plaintiff was not a part of me. Correct. Correct. Correct. Has nothing to do with it. He's allowed to be part of maintenance. Right. Yeah, because we were part of maintenance that would create a different questions. Well, there's a there's a whole turnover procedure that they have to go through right now. They're just in a switching operation, moving these trains and they're doing the very thing the act was designed for, which is to protect people from coupling, you know, in the LIA with this equipment. I mean, this is the very essence of the act and they're switching, which multiple cases have discussed switching. And not one says switching doesn't. Correct me if I'm wrong. Judge Ehrlich found that at the time of the incident, 85 16 was not yet in the maintenance area. Is that correct? Well, I don't think he found that it at the time of two of the three things that caused this accident, the failure to couple the bad glad hand at the time those things occurred. It was just outside the pit. Was it only the failure to couple with a defective couple? It was it was a defective couple, a failure to couple the court held despite Sloan admitting it would be defective. It's not defective as a matter of law. Despite my experts saying it was defective, it was not defective as a matter of law. Those issues apparently are not for this court. So it didn't couple the glad hand failed. The defendant found that in their own reports. The glad hand failed outside the pit track. A few seconds later, they crossed that boundary, that imaginary boundary of the pit track. That's when the accident happens. So they cross into it and the defendant is correct. There is a pit below where the plaintiff was when he fell and he fell into the pit a few seconds earlier, but it's still transportation activity. They have to move it onto the track. They can't leave it off the track. The transportation department must complete their function. So one second it's in the transportation department territory is two-thirds of the acts that occurred in this case that led to the accident. Does that make sense? It does. It's just that those are important facts and you seem to say that they're not material facts. I think they're material, but if 20303 is followed in the Supreme Court cases, you can take all the defendant's facts and say, assume they're true. Okay. They lose plaintiff wins because 20303 is very clear on its face. It's straightforward language that the risk is to the carrier and they're not going to be exempted. And that's the SAA. It can only be for a train that's in use because SAA doesn't apply if it's not in use. So that statute would be meaningless if it didn't apply here because it has to be in use to fall into the SAA. So your response to Justice Hyman is that you believe that there are no disputed material facts and that based upon material facts in this case, this court should decide the issue. If 20303 is followed, absolutely. If 20303 is not going to be followed and Supreme Court decisions are not going to be followed and we go to more recent decisions in the appellate court, then I would agree with the earlier finding of this court that there are fact issues. To the appellate court, you're referring to the circuits, the federal circuits, correct? Federal circuits, the Illinois appellate court. Well, there's some Illinois appellate court decisions that seem to lean your way. Yeah. Yeah. I mean, we cite those and they all find for a news. They all say this is to be liberally interpreted to protect these people in a very dangerous occupation, not to wipe out all switching operations now. I mean, that's so much of what they do. Yeah, that seems to be what the Fourth Circuit is saying also. But I have a question on the five Bella factors. You heard what your opponent said on them. Is there anything you disagree with regard to those factors? I mean, I'm just talking about the five factors. You listed what they are and the facts with regard to those factors are in the record. I'm not saying anything. We created a chart of those five factors. I'm not looking at them in front of me. We created a chart of those factors and how we interpret is being related. The ballot decision said it was a multifactorial test. They listed five factors. Is that mean factors held by the other court are no longer factors? It's just these five does taking it to a place of my question. My question is on those five factors, you heard what he had to say. Okay. I disagree with them as expressed in the chart in my report in our brief, which is much more succinctly stated than I can, for example, taking it to a place of like that is their favorite factor. But the problem with that is it contradicts 20303. It contradicts the U.S. Supreme Court. So is that really intended? And that is going to admit for the merits again. Okay. All right. You know, again, the question is whether we send it back to Judge Ehrlich or we answer the certified question, you keep wanting to talk about the merits. If we want to talk about that, we can do that at a later date. The question is, do we send it back to Judge Ehrlich because we don't have enough information to decide the five factors of ballot or we do have enough information to decide the five factors? Okay. As Justice, Presiding Justice Walker just said, you know, the information is there. Now, there's no reason to send it. Is there a reason to send it back to Judge Ehrlich? Or are you I thought you wanted us to make a decision on the on the certified question. I did based on the law, not based on the law. It's a legal question that was asked us. That isn't a factual question. If there's factual issues that need to be decided that we're not going to decide it, we're going to send it back and you can write it out before Judge Ehrlich or we have enough and we'll we'll make a decision on the state. We know a legal issue is a legal issue. Okay, right. You know, it's funny. I know that and I don't mean to. You know, it's funny. I mean, discovery is is closed. I think so. We'll be on trial determining these issues and we'll be back here and it'll be on trial again. That's what you're trying to avoid. And that's why I so much wanted all the issues so we wouldn't spend 300,000, $400,000 on this case with the experts and everything. Um, if it's going to be the ballot factors, I felt we had sufficiently stated the five factors in our brief sufficiently enough to show how ballot would go our way. And I would rely that's fine. That's your question. So that's my question. So right. Thank you. Is there any other aspect of this case? You want to discuss with me or should I just wrap it up? But one quick question. Is there any decision out there from either the Illinois Supreme Court of the United States Supreme Court that supports your issue that we would be bound by? Because even though it's this court's position that we should follow the federal court so that we have a consistent body of law, we're not bad. It seems to me that there's been nothing presented to us we're bound by. So my question to you, and I'll ask the same question to Mr. Averello, whether or not there's anything that we're bound by. Thank you. Thank you for asking that. Texas versus Pacific Railway, 241 U.S. 33. The only defense to this case is it's old. It's 1916. Taking bad order shops, cars to a shop, car out of service for a month, effective grab iron, uh, that was in use, period. And then the cases that repeatedly say taking cars to areas of repair, uh, Minneapolis, the Minneapolis case, the Chicago Great Western cases are all Supreme Court. Great Western Railroad, railway case, all say the same thing. But the best case and the one most on point, which is far more, uh, far less in use than this case is Texas versus Pacific. You got defective cars. They're put on a spur track for a month, just sitting there. Defective grab iron in use as a matter of law, Supreme Court. That answers your question. So to, unless there are other questions, but my only last 20 seconds is whether maybe one of you believes it's relevant. I still say we all seem to have, myself included are all missing 20303. The first sentence taking the, to a place of repair, which is, could be the case here under the defendant's argument, movement of the vehicles, the risk of the carrier under the SSA. Thank you very much. Thank you. Thank you, Justice Walker. The plaintiff said that there are factual disputes and I'm quoting him here, quote all over this record. What I didn't hear from plaintiff's was many examples actually pointing to the record when he asserted that, uh, for example, point of plaintiff said that there was a dispute about where eight five one six was at the time of plaintiff's injury. I direct the court to page three of plaintiff's own response to our petition for rehearing where he says in the first paragraph quote, at the exact moment of plaintiff fell from the locomotive, plaintiff was over what defendant terms that designated maintenance area, i.e. the elevated pit track. He said it right there. I would ask the court not to rely on plaintiff's counsel's characterizations of the record, but to look at the record itself because when it does, it will realize that union Pacific is right. When we say that everything you need to decide this certified question is right there. Justice Griffin, you asked about whether we have the facts, the three facts that are pointed out in or identified, I should say, by the trial court in its certified question. We do. If you look at page seven of the trial court's decision, the court said, given these factors, these are the trial court's factual findings, quote, the record presented in this case indicates that one UP 8516 and UP 7269 were on the track over the maintenance pit at the time of trip's injury and that both locomotives were, quote, in union Pacific's maintenance yard for routine maintenance. Justice Walker, you asked plaintiff's counsel about that, too. So we have factual findings from the trial court. We have plaintiff's counsel's own statements in the briefing on this. I would just ask the court to look to that rather than relying on plaintiff's counsel's representations about the record here today. Plaintiff's counsel kept pointing to section 20303, and if the court would like me to get into that, I'm happy to, but I would rather go to the case that plaintiff said was seminal on that case. Plaintiff was calling it Texas Pacific, I believe. So that was an FSAA case, and it involved a switchman, and he fell off a rail car that he was going to move. He wasn't moving it. He was going to move it from the main line to a repair area. It was on a receiving line, plaintiff is right, for a period of time, but it was still part of the main line. When he was going to move it, it was still part of the main line. The 7th circuit in Lyle said that case is quote, clearly distinguishable, and not just that case, but all the other cases that plaintiff just mentioned, the progeny of the Rigsby case, the 7th circuit said that it's clearly distinguishable because they involved equipment that was still in use on the main line. It had not yet been withdrawn from service. Here, both locomotives were plainly withdrawn from service. They had not been used in just outside of it before plaintiff moved it into the maintenance area. They needed maintenance and inspection and possibly be repaired before they could be returned to duty on the main line per federal regulations. So I do not think that Rigsby applies here. I think as the 7th circuit said, it is clearly distinguishable from the kind of facts we see here. If there are no other questions, I would wrap up simply by saying that we asked the court to grant the petition. One thing before you wrap up, Mr. O'Rourke. Judge Ehrlich specifically found that 8516 was being moved to a track above the maintenance pit while 7269 was already at that location, and then went on to find that the machinists had not began their work on either locomotive. And used that as a basis for the ultimate finding that one train was in use and the other one was not. And he also mentioned that 8516 had not yet coupled with 7269 at the time the trip fell into the maintenance pit. And I think that may be because of the defective coupling. So, and these are facts that Justice Ehrlich seemed to have found in this case. Did you want to respond to any of that? Because he actually used that as a basis to find that 8516 was in use and that 7269 was not in use. I'm right, Justice Walker. And I hope you don't think I'm being snarky when I say in order to respond to that, I need to get into the merits of the dispute a little bit. Go ahead. I think the judges all agree that you can get into it a little bit. Okay. Okay. One, Justice Ehrlich found that there was no defective coupling and all the evidence supports that conclusion. So I think when the court said there was a defective coupling, we would respectfully disagree with that. Two, I think we're just, I think we're just as early missed is that he wasn't, he wasn't focusing on what Mr. Tripp was actually doing at the time of the accident. And under LaDure and even under ballot, that is a factor of great weight. So when he mentioned that the train hadn't yet been hauled. I just want to cut you off right there because we're talking about facts. But isn't it that as a part of the transportation team, that what was being done is simply transporting a locomotive as opposed to there being maintenance work or that it being confined to the maintenance area, because that's actually a factor in it. There are some courts that say that those two factors, the first two factors that we talked about are the most important factors. Now there are other courts that say no factor is more important than the other. So let me hear from you. Some courts say that we look at the totality of the circumstances. I Right. And so I've done a lot of research on it. So tell me, tell me what your, where are we? Okay. So the two primary factors that you just referenced were the location of the train or the location of the locomotive at the time of the accident and the activity of the plaintiff at the time of the accident, which we've already discussed and I'm happy to go over again. But Justice Walker, I think your question goes a little bit outside of the certified question, which asks, okay. Okay. Going back to, I think, and what I was saying before, I think directly gets at what you're getting at Justice Walker, which is the activity of the plaintiff, whether the locomotives were coupled, that's not a factor that this court identified in BALA as being relevant. Whether blue flags were raised, that's not something that this court identified in BALA as being relevant. Now, what you will not find in any reviewing court case from across the country is a court saying that the departmental designation of a plaintiff at the time of the accident is dispositive. And you won't see that listed in any of the factorial tests that any reviewing court has put out there. You'll also see no court in the country, no reviewing court in the country that says that whether or not locomotives are coupled is a controlling factor, or whether or not blue flags are raised is a controlling factor. When they identify the controlling factor, they're either looking at what the first district said in the Pinkham case and what the fourth district said in the Angel case, location and activity, or they're applying the test other than the Fifth Circuit, which sort of has its own bright line test, or they're applying the test that this court applied in BALA and the Fourth Circuit applied in the Dean's case, which is those five factors. Plaintiff is trying to get you to focus on these other things because obviously they favor, they could favor his position. But Justice, keep in mind, that is not a factor that any reviewing court in the country has said should be part of multi-factorial analysis. So I would respectfully suggest that those facts are a distraction from the proper outcome of this case. Anything, Justices? Okay, thank you both. Oh, go ahead, you may finish. You can close out. I'm sorry, I thought you were done. It's fine, Your Honor. I think you know what we're asking for. Thank you. Okay, sure. Okay, well, we thank you both. Your briefing was phenomenal. Your argument has been great. You guys have done a good job here today. We appreciate that. We appreciate the lawyers who give us excellence, and you guys have done that. So thank you.